**No. 25-4365**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
*Plaintiff/Appellee,*

**v.**

**AUSTIN LEE HALE,**
*Defendant/Appellant.*

On Appeal from the United States District Court
for the Western District of Virginia
Abingdon Division (Hon. Robert S. Ballou)

BRIEF OF THE APPELLANT

**MARY E. MAGUIRE**
Federal Public Defender
for the Western District of Virginia

**ERIN TRODDEN**
Assistant Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA 22902
(434) 220-3380

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................... 1

STATEMENT OF JURISDICTION ............................................ 2

STATEMENT OF ISSUES ........................................................ 2

STATEMENT OF CASE .......................................................... 3

SUMMARY OF ARGUMENT .................................................. 8

ARGUMENT ............................................................................ 9

I.  THE GOVERNMENT DID NOT MEET ITS BURDEN OF
    SHOWING THAT MR. HALE TRANSMITTED A THREAT IN
    INTERSTATE COMMERCE ................................................ 9

    A.  Standard of review ..................................................... 9

    B.  Argument ................................................................... 9

        1.  Mr. Hale did not transmit a statement in interstate
            commerce under the plain text of the statute. ..................... 9

        2.  Cases applying 18 U.S.C. § 875(c) demonstrate that
            Mr. Hale did not transmit a threat in interstate
            commerce within the meaning of the statute ..................... 15

            a.  The government concedes that use of the internet, in itself, is
                insufficient to amount to transmission in interstate commerce ... 16

            b.  Whether Mr. Hale intended to send a
                message in interstate commerce is irrelevant. ............................ 17

            c.  In addressing whether Mr. Hale transmitted a communication
                in interstate commerce, this Court should consider the passage
                of Mr. Hale's communication based on his own conduct. .............. 19

        3.  Alternatively, the rule of lenity supports Mr. Hale's acquittal .. 26

CONCLUSION ......................................................................... 27

REQUEST FOR ORAL ARGUMENT ..................................................... 28

CERTIFICATE OF COMPLIANCE ...................................................... 29

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chiarella v. United States,*
    445 U.S. 222 (1980) ..................................................................... 24-25

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001) ......................................................................... 16

*Elonis v. United States,*
    575 U.S. 723 (2015) .................................................................... 10-11

*Fisher v. United States,*
    603 U.S. 480 (2024) .................................................................... 12-13

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
    563 US 1 (2011) ............................................................................... 27

*Shular v. United States,*
    589 U.S. 154 (2020) ......................................................................... 27

*United States v. Biyiklioglu,*
    652 F. App'x 274 (5th Cir. 2016) ................................................. 16-17

*United States v. Coates,*
    949 F.2d 104 (4th Cir. 1991) ........................................................... 20

*United States v. Darby,*
    37 F.3d 1059 (4th Cir. 1994) ..................................................... 11, 17

*United States v. Haas,*
    37 F.4th 1256 (7th Cir. 2022) .................................................... 20, 23

*United States v. Hunt*
    99 F.4th 161 (4th Cir. 2024) .............................................................. 9

*United States v. Kammersell,*
    196 F.3d 1137 (10th Cir. 1999) ........................................... 18, 21, 27

*United States v. Kelner,*
    534 F.2d 1020 (2d Cir. 1976) ............................................. 21, 23, 24

*United States v. Khan,*
    937 F.3d 1042 (7th Cir. 2019) ........................................................ 18

*United States v. Kieffer,*
    681 F.3d 1143 (10th Cir. 2012) ...................................................... 16

*United States v. Morales,*
    272 F.3d 284 (5th Cir. 2001) .......................................................... 18

*United States v. Tanner,*
    26 F. App'x 469 (6th Cir. Dec. 28, 2001) ...................................... 21

*United States v. Whiffen,*
    121 F.3d 18 (1st Cir. 1997) ............................................................ 21

*United States v. White,*
    810 F.3d 212, 218 (4th Cir. 2016) ............................................. 7, 22

*United States v. Wright,*
    625 F.3d 583 (9th Cir. 2010) ................................................... 10, 17

*Valladares v. Ray,*
    130 F.4th 74 (4th Cir. 2025) ............................................................ 9

## Statutes

18 U.S.C. §2 ............................................................................ 24, 25

18 U.S.C. § 35 ............................................................................... 14

18 U.S.C. § 43 ............................................................................... 14

18 U.S.C. § 500 ............................................................................. 12

18 U.S.C. § 875 .................................................................... *passim*

18 U.S.C. § 876 ............................................................................. 13

18 U.S.C. § 1343 ........................................................................... 12

18 U.S.C. § 1351 ........................................................................... 13

18 U.S.C. § 1716 ....................................................................... 13-14

18 U.S.C. § 2282A ........................................................................ 13

18 U.S.C. § 2292 ........................................................................... 13

18 U.S.C. § 2425 ........................................................................... 14

18 U.S.C. § 3231 ................................................................ 2

18 U.S.C. § 3742 ................................................................ 2

28 U.S.C. § 1291 ................................................................ 2

## **Other**

*Orin Kerr, Law in a Networked World: Criminal Law in Virtual Worlds*,
    2008 U. Chi. Legal F. 415 ................................................. 17

No. 25-4365


IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT


UNITED STATES OF AMERICA,
                    *Plaintiff/Appellee*,


v.


AUSTIN LEE HALE,
                    *Defendant/Appellant*.


On Appeal from the United States District Court
for the Western District of Virginia
Abingdon Division (Hon. Robert S. Ballou)


BRIEF OF THE APPELLANT


## **INTRODUCTION**

To be guilty under 18 U.S.C. § 875(c), a defendant must transmit a threat in interstate commerce. This case presents a question of first impression in this Circuit: whether a defendant transmits a threat in interstate commerce when he transmits it within the state, and it is the recipient who brings it across state lines.

The government's evidence at trial showed that Austin Hale, a sometime patient of Ballad Health who suffers from mental illness, used Ballad Health's "Contact Us" page, run by Salesforce, to transmit a threatening message from his home in Virginia to a Salesforce drop box for Ballad Health, also in Virginia. The next day, Ballad Health personnel in Tennessee logged into the Salesforce server, retrieved the message, and viewed it. This Court should recognize that these facts do not amount to a transmission by the defendant in interstate commerce, reverse the district court's denial of Mr. Hale's Rule 29 motion, and grant a judgment of acquittal.

## STATEMENT OF JURISDICTION

This is an appeal of a final judgment of the district court entered on June 25, 2025. JA1414-1420. Mr. Hale noted his appeal on June 26, 2025. JA1421. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) over this timely appeal from a final judgment.

## STATEMENT OF ISSUES

When Mr. Hale transmitted a threat from his home in Virginia to a virtual drop box for Ballad Health, also located in Virginia, and Ballad Health personnel retrieved it and brought it across state lines, did Mr.

2

Hale transmit a threat in interstate commerce in violation of 18 U.S.C. § 875(c)?

## STATEMENT OF CASE

On the morning of January 9, 2024, Brad Folck, the manager of the Consumer Contact Center for Ballad Health, was working at his office in Johnson City, Tennessee. JA686, JA689. Mr. Folck's job includes responding to inquiries through the "Contact Us" page on Ballad's website. JA687-688. Salesforce, a third party, operates Ballad's "Contact Us" platform. JA688, JA695. When someone submits an inquiry through the "Contact Us" page, Mr. Folk and his team receive an email from Salesforce to a community email box they all share notifying them that they have an inquiry and "to go check Salesforce." JA688. After receiving this notification, they log into Salesforce and can pull up a queue and see the new inquiries that have come in. JA689. The email to the Ballad Health community inbox from Salesforce does not have the content of the inquiries through the "Contact Us" page; to view them, Mr. Folck or one of his team members must log in to Salesforce and pull them up. JA696, JA707. Mr. Folck described the notification as, "It's like, hey, log in and you'll see this message." JA702. To see the content of the messages sent,

3

Mr. Folck or his team must log in and download those messages. JA696, JA707. Once they receive the inquiry, they can then send it out from Salesforce. JA689.

Kenneth Harr, Ballad Health's chief security officer, testified that the messages sent through Ballad's "Contact Us" page go to a server located in Ashburn, Virginia. JA708, JA721-722, JA863, JA866.

On the morning of January 9, 2024, Mr. Folck logged in and checked the online inquiries that had come in overnight while the rest of his team was taking calls. JA689-690. One of those inquiries had the subject "mental health" and stated, "I'm gonna walk in to your hospital and shoot the stafff [sic] for what you did to me and my family." JA919-920; JA692. The sender was listed as Austin Hale, and a phone number and email address were also provided. JA920.

The message was dated January 8, 2024, indicating that Salesforce had received the message on that date. JA700. Mr. Folck logged into Salesforce on January 9, downloaded the message, and read it. JA700.

Understanding it as "a threat to the facility," Mr. Folck immediately sent the message on to the patient experience contacts at the Johnson City Medical Center, to whom it was addressed. JA690,

JA693. Although the message itself does not indicate which facility is addressed, that information is shown in Salesforce. JA704. In response, Ballad Health authorities limited access to facilities where Mr. Hale had been a patient and stationed local law enforcement vehicles prominently outside two hospitals. JA712-713.

Law enforcement investigated, and later that day found Mr. Hale at the home he shared with his mother in Gate City, Virginia. JA732, 756-757. They interviewed him, and when asked why he thought the FBI might be there, he said it was "[p]robably because I sent the death threat and shit to the hospital." JA760. He told law enforcement that he sent it from the desktop computer at his house. JA760. While law enforcement discussed the possibility of having Mr. Hale civilly committed pursuant to an emergency commitment order, they concluded that the facility he had threatened would not take him. JA789. Mr. Hale was arrested later that day. JA761-762.

Mr. Hale was charged with a single count of violating 18 U.S.C. 875(c). JA88. At the close of the government's evidence at trial, he moved to dismiss under Rule 29, based on the government's failure to show that he had transmitted the message in interstate commerce. JA804-808,

JA935-943. The district court took the motion under advisement. Mr. Hale renewed his Rule 29 motion after all evidence had been submitted. JA935-943, JA978-990. The district court once more took the matter under advisement. JA990.

The jury found Mr. Hale guilty of violating 18 U.S.C. 875(c). JA973, JA1046.

Following the jury's verdict, the parties submitted additional briefing. JA1053-1219. The government's briefing focused on causation, arguing that Mr. Hale was either a proximate cause or a but-for cause of the threat's travel across state lines. JA1056-1061. The government argued that the interstate transmission element required only that the defendant be a but-for cause of the message's crossing state lines, JA1056-1061, but that even if proximate causation, and thus foreseeability, was required, the facts in this case satisfied that requirement. JA1065. Mr. Hale filed a reply, arguing that the statute required Mr. Hale to have directly transmitted a threat across state lines, and that the undisputed evidence shows that he did not. JA1196-1208.

The district court conducted another hearing after the supplemental briefing was filed. JA1211-1234. After hearing argument

from both sides, the district court noted, "It's a conundrum. It's a challenge." JA1229. At the end of the hearing, the district court again took the matter under advisement. JA1232.

In a written opinion, the district court ultimately denied Mr. Hale's motion for judgment of acquittal. JA1235. The district court determined, "The dispute here centers on how much the defendant must actively participate in transmitting the message to cross those [state] lines." JA1238. After noting there was no case directly on point and reviewing case law from other circuits, the district court relied on the defendant's intent to transmit the message interstate:

> Similar to *Haas* and *Kelner*, Hale's message had a clear interstate target: he chose Johnson City Medical Center—where he had previously received treatment—as the recipient and used language specifically alluding to that hospital. His threat, like those in *Haas* and *Kelner*, was ultimately viewed by an individual in another state — Folck, who accessed it through Salesforce's server. Further, the Fourth Circuit's dicta in *White* supports this position, stating that § 875(c)'s "foreign [or interstate] commerce element is clearly satisfied" where the sender and recipient of threatening emails are in different countries. *White*, 810 F.3d at 228.

JA1239-1240.

The district court therefore determined that "a reasonable jury could find his threat was transmitted in interstate commerce based on the evidence presented." JA1240.

7

At sentencing, recognizing the role that Mr. Hale's mental health crisis played in his offense, the district court sentenced him to time served—approximately 10 months—and 2 years of supervised release. JA1408-1408, JA1414-1420. Mr. Hale timely noted this appeal. JA1421.

## <u>SUMMARY OF ARGUMENT</u>

The evidence was insufficient for the jury to find that Mr. Hale transmitted the threat at issue in interstate commerce, and the district court erred in denying his motion for judgment of acquittal. The evidence in this case is not in dispute: Mr. Hale transmitted a threat from his home in Virginia to a Salesforce server in Virginia that held messages for Ballad Health, and a Ballad Health employee had to affirmatively log onto the server and download the message in order to view it. The fact that the employee who did so in this case was in Tennessee does not mean that Mr. Hale transmitted that message in interstate commerce. The plain text of 18 U.S.C. § 875(c) and the cases interpreting it demonstrate that it does not cover situations such as the one in this case.

## ARGUMENT

### I.  THE GOVERNMENT DID NOT MEET ITS BURDEN OF SHOWING THAT MR. HALE TRANSMITTED A THREAT IN INTERSTATE COMMERCE.

#### A.  Standard of review

This Court reviews de novo a district court's denial of a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. *United States v. Hunt*, 99 F.4th 161, 184 (4th Cir. 2024). In conducting such a review, this Court presumes that the jury resolved all evidentiary conflicts in the government's favor, but must acquit if no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

This Court reviews questions of statutory interpretation de novo. *Valladares v. Ray*, 130 F.4th 74, 80 (4th Cir. 2025).

#### B.  Argument

##### 1.  Mr. Hale did not transmit a statement in interstate commerce under the plain text of the statute.

When conducting statutory analysis, this court must "first determine whether the meaning of the statute is ascertainable through the text alone." *Valladares*, 130 F.4th at 80. 18 U.S.C. § 875(c) provides, "Whoever transmits in interstate or foreign commerce any

9

communication containing any threat . . . to injure the person of another" shall be guilty of violating this section. The plain meaning of the word "transmit" is "to send or convey from one person or place to another." *Transmit*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/transmit (last visited Jan. 30, 2026); *see also Transmit*, Black's Law Dictionary (12th ed. 2024) (defining transmit as "to send or transfer (a thing) from one person to another"). These definitions are active, requiring the defendant to "send," "convey," or "transfer." Thus, to "transmit in interstate commerce," a defendant must convey the putative threat from one state to another.

The phrase "in interstate commerce" modifies the actus reus that section 875(c) proscribes, transmitting. Thus the statute requires that the *defendant* transmit the threatening communication interstate. *See United States v. Wright*, 625 F.3d 583, 594 (9th Cir. 2010) (applying the same rationale to the language of 18 U.S.C. § 2252A(1), which at the time required mail, transport, or shipping of prohibited material "in interstate or foreign commerce."). *See also Elonis v. United States*, 575 U.S. 723, 743 (2015) (Alito, J., concurring) ("Thus, conviction under this provision requires proof that: (1) the defendant transmitted something, (2) the

10

thing transmitted was a threat to injure the person of another, and (3) the transmission was in interstate or foreign commerce.")

As this Court has recognized, a defendant need not know that the communication is traveling in interstate commerce. *United States v. Darby*, 37 F.3d 1059, 1067 (4th Cir. 1994) (noting that "criminal statutes based on the government's interest in regulating interstate commerce do not generally require that an offender have knowledge of the interstate nexus of his actions.") But the corollary to this proposition is that the defendant's actions must have an interstate nexus.

The government, in its briefing below, espoused a broader reading of "transmit," arguing that it included "to cause or allow to spread," or to "cause . . . to pass." JA1057, citing Merriam-Webster, "transmit." A closer look at the definition reveals the deficiencies in the government's proposal. "To cause or allow to spread" is a subdefinition that refers to either conveying by inheritance or conveying an infection. *Transmit*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/transmit (last visited Jan. 30, 2026). While one may transmit an infection by allowing it to pass or spread, the government does not appear to be arguing that anyone who passes along or passively allows a threatening

11

message to spread has "transmitted" it within the meaning of the statute, a proposition that would drastically expand the scope of section 875(c) liability. The government's second proffered definition is similarly inapposite: in full, it reads, "to cause (*something, such as force or light*) to pass *or be conveyed through space or a medium*." *Id.* (emphasis added). This is a different kind of "transmission" from that addressed in 18 U.S.C. § 875(c).

Further, the government's proffered definition, which would read not only sending but causing to be sent into "transmits," adds a meaning to the statute that Congress did not include. When Congress intends a criminal statute to cover not only directly transmitting but causing a transmission, it knows how to say so. *See, e.g.,* 18 U.S.C. § 1343 (criminalizing, in relevant part, whoever "transmits or causes to be transmitted."); 18 U.S.C. § 500 (criminalizing, in relevant part, "whoever . . . transmits . . . or causes to be transmitted"). It is a basic canon of statutory interpretation that statutes must be read so that no part of the statute is rendered inoperative or superfluous. *See, e.g., Fisher v. United States*, 603 U.S. 480, 496 (2024) (noting that statutory surplusage is "disfavored," and an interpretation "that creates substantially less of it

12

is better than a construction that creates substantially more."). The government's interpretation would make surplusage of "causes to be transmitted" in other statutes criminalizing transmission.

Further, in the very next section of the United States Code, which deals with mailing threatening communications, the statute covers "Whoever knowingly deposits in any post office or authorized depository for mail matter . . . or knowingly *causes to be delivered* by the Postal Service" a demand for ransom or a threat to kidnap or injure. 18 U.S.C. § 876 (emphasis added). This language further supports that "causing to be transmitted" was not behavior that 18 U.S.C. § 875(c) intended to cover, as Congress was explicit when it intended to cover causing the mailing of a prohibited communication in a parallel statute.

Indeed, Congress has been clear about when its laws cover not only engaging in an action, but also causing that action to occur. *See, e.g.,* 18 U.S.C. § 1351 ("whoever . . . recruits, solicits, or hires . . . or causes another person to recruit, solicit, or hire"); 18 U.S.C. § 2292 ("whoever imparts or conveys or causes to be imparted or conveyed"); 18 U.S.C. § 2282A ("A person who knowingly places, or causes to be placed"); 18 U.S.C. § 1716 ("A person who knowingly deposits for mailing or delivery,

13

or knowingly causes to be delivered by mail"); 18 U.S.C. § 43 ("Whoever . . . uses or causes to be used the mail or any facility of interstate or foreign commerce"); 18 U.S.C. § 35 ("Whoever imparts or conveys or causes to be imparted or conveyed"). Congress also knew how to criminalize initiating a transmission. *See* 18 U.S.C. § 2425 ("Whoever . . . knowingly initiates the transmission…"). No such language is included in 18 U.S.C. § 875(c). Therefore, the government's proffered definition should be rejected. The plain language of the statute covers only "transmitting," which requires sending or conveying from one person or place to another.

Mr. Hale did not transmit a message in interstate commerce under this definition. He transmitted a message from his home in Gate City, Virginia to Salesforce in Ashburn, Virginia. His message would have remained in the Salesforce drop box had Mr. Folck or someone else from his team in Tennessee not logged into the system, recovered it, and downloaded it. *See* JA696, JA702. *See also* JA1224 ("THE COURT: Right. But it's not automatically forwarding the messages. It's saying we're holding for you something that we received for you. If you want it, come and get it. Right? MS. MACON: The government would agree with that, Your Honor."). Mr. Folck and his team did not automatically receive the

message, and to obtain it, they had to proactively log onto Salesforce and download the message. JA696, JA707. Nothing about this process describes a transmission made by Mr. Hale. When Mr. Hale hit "submit" on the "Contact Us" page on Ballad Health's website, in other words, his message landed in Virginia. He did not transmit the message to Mr. Folck in Tennessee. For this reason, the Court need not reach the government's argument, raised below, for but-for or proximate causation, both of which assume that causing the transmission of a message, as opposed to simply transmitting it, is covered by the statute. The plain language of 18 U.S.C. § 875(c) resolves this question in Mr. Hale's favor: the defendant must transmit the message in interstate commerce, and Mr. Hale only transmitted his message as far as Ashburn, Virginia.

> 2.   Cases applying 18 U.S.C. § 875(c) demonstrate that Mr. Hale did not transmit a threat in interstate commerce within the meaning of the statute.

No case appears to have addressed a situation directly on point, and cases interpreting the scope of transmission under 18 U.S.C. § 875(c) are rarer than those interpreting the threat element of the statute. But a review of cases where the sufficiency of transmission in interstate

commerce has been challenged demonstrates that the government has not met its burden here.

> a. *The government concedes that use of the internet, in itself, is insufficient to amount to transmission in interstate commerce.*

The government agreed below that use of the internet, in itself, amounted only to a transmission "affecting interstate commerce," while the law requires that the message be "in" interstate commerce—that is, that it had actually crossed state lines. JA956 ("If I were arguing the fact that he logged onto the internet, period, he logged onto the internet, that would be me arguing affecting interstate commerce. That's not the argument I'm making before you today. That's not the evidence before you today."). *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (differentiating between "affecting commerce," which reaches to the outer limits of the Commerce Clause, and "in commerce," which has a more limited reach).

At least three circuits agree with the government. *See also United States v. Kieffer*, 681 F.3d 1143, 1153 (10th Cir. 2012) (explaining that defendant's transmission of material over internet does not, by itself, satisfy the interstate commerce element); *United States v. Biyiklioglu*,

652 F. App'x 274, 280 (5th Cir. 2016) (finding the interstate commerce element satisfied based on documented interstate wire transfers rather than use of the internet in itself); *United States v. Wright*, 625 F.3d 583, 590-95 (9th Cir. 2010) (addressing a prior version of 18 U.S.C. § 2252A(1), which at the time referred to activities in interstate commerce, but has since been amended). Thus, the government is required to prove that Mr. Hale's transmission traveled "in" commerce, that is, that it traveled from one state to another.

> b. *Whether Mr. Hale intended to send a message in interstate commerce is irrelevant.*

The government similarly agrees that it is irrelevant whether Mr. Hale intended to send a message intrastate or interstate. JA1056; *United States v. Darby*, 37 F.3d 1059, 1067 (4th Cir. 1994) (recognizing that the offender need not know that his actions have an interstate nexus). *See also* Orin Kerr*, Law in a Networked World: Criminal Law in Virtual Worlds,* 2008 U. Chi. Legal F. 415, at 419 (noting that section 875(c) "requires sending a threat that actually crosses state lines; whether a user might perceive the threat as 'interstate' in nature is irrelevant.")

For this reason, the government's and the district court's focus on the intended recipient and their location is misplaced. *See* JA1065,

JA1223, JA1229 ("The transmission stops when it is opened at its final destination by the recipient."); JA1239-1240 ("Hale's message had a clear interstate target; he chose Johnson City Medical Center—where he had previously received treatment—as the recipient and used language specifically alluding to the hospital.") As *Darby* and other cases make clear, where the defendant thought he was sending the message is irrelevant, as are its "final destination" or "target;" what matters is where a defendant actually sent it.

Courts have recognized that a threat need not reach any intended recipient to be criminal under section 875(c). *See, e.g., United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001); *United States v. Kammersell*, 196 F.3d 1137, 1139 (10th Cir. 1999) ("No requirement exists under § 875(c) that the threat actually be received or seen by anyone out of state.") Indeed, it need not have an intended recipient at all, as cases involving non-specific posts on Facebook or other social media demonstrate. *See United States v. Khan*, 937 F.3d 1042, 1046-51 (7th Cir. 2019) (Facebook posts threatening "college students," "vulnerable individuals," "high net worth individuals," and people "walking their dogs" were sufficient to support the jury's finding of guilt). The

government's argument below amounts to a tautology: a transmission stops when it is received by its recipient. But because the location and even the existence of an intended recipient are irrelevant to the offense, the government's theory and the district court's rationale do not square with what conduct is required for a violation of section 875(c). In other words, if a defendant's intent to keep a communication *intra*state is not relevant to guilt, neither is any intent to make an *inter*state communication. And if a communication need not reach its intended recipient or have an intended recipient at all, then the identity of the intended recipient is similarly irrelevant to the interstate commerce analysis. Rather, the critical part of the analysis is the actual path of the message and where it actually landed—in the same state, or across state lines.

> c. *In addressing whether Mr. Hale transmitted a communication in interstate commerce, this Court should consider the passage of Mr. Hale's communication based on his own conduct.*

Rather than focusing on whether Mr. Hale's communication ultimately reached Ballad Health in Tennessee, as the district court did, this Court must consider the path of Mr. Hale's transmission and where

that transmission landed. In considering this question, several points stand out.

First, this Court has recognized that the government cannot manufacture jurisdiction by bringing an otherwise intrastate communication across state lines. *United States v. Coates*, 949 F.2d 104, 106 (4th Cir. 1991). While the holding of *Coates* applies specifically to efforts by the government to manufacture jurisdiction, its rationale makes clear that it is not enough for a communication to somehow, at some point, cross state lines. Indeed, the Seventh Circuit in *United States v. Haas*, 37 F.4th 1256 (7th Cir. 2022), suggested that the actions of third parties do not form part of the defendant's transmission in interstate commerce. Haas had argued that, because a California organization did not view his social media posts until months after he posted them, he could not have knowingly transmitted a threat to California on the dates alleged in the indictment. *Id.* at 1265. The court rejected that argument, noting, "Haas's point might be better taken if the California organization had viewed only later re-posts by a different user. In that case, *whether Haas himself transmitted the posts to California on the dates in question might be relevant." Id.* (emphasis added). This broad principle accords

20

with the text of section 875(c), which requires that the *defendant* transmit a threat in interstate commerce.

On the other hand, courts considering what amounts to transmission in interstate commerce have treated automatic movements of the communications system as part of the defendant's transmission. *See*, *e.g., United States v. Tanner*, 26 F. App'x 469 (6th Cir. Dec. 28, 2001) (noting that defendant's call from Ohio was routed through a facility in either Texas or Illinois and then sent to Michigan before finally reaching his attorney in Alabama); *United States v. Whiffen*, 121 F.3d 18, 20 (1st Cir. 1997) (defendant's call was automatically transferred from New Hampshire to Florida); *United States v. Kammersell*, 196 F.3d 1137, 1139 (10th Cir. 1999) (instant message automatically routed through Virginia after being sent from Utah to elsewhere in Utah satisfied the requirement for transmission in interstate commerce). *See also United States v. Kelner*, 534 F.2d 1020, 1030 (2d Cir. 1976) (Meskill, J., concurring) ("[B]y utilizing the aforementioned modes of transmission, the threatener, by paying for the use of the telephone or mail, was entitled to interstate delivery of his message").

In contrast, the transmission here was not automatic. *See* JA688, 702, 707. *See also* JA1224 (agreeing that the messages to the Salesforce server were not automatically forwarded). According to the government's evidence at trial, a human being had to log in and download the message in order to view it. In that sense, the situation in this case is meaningfully different from a case where, for example, an email is automatically forwarded to the inbox on a person's phone, or a cell phone call is automatically routed to a recipient who is out of state.

The district court relied on this Court's decision in *United States v. White*, 810 F.3d 212, 218 (4th Cir. 2016), but *White* addressed a different interstate commerce question, whether the defendant had actually sent the emails at issue. *Id.* at 218-19. The jury found that he did, and this Court recognized, "There is no dispute Appellant was in Mexico and MW in Virginia when the e-mails were sent; if he sent them, the foreign commerce element is clearly satisfied." *Id.* at 228. *White* thus does not support the government's position in this case, because it merely recognizes the noncontroversial proposition that when a defendant sends an email in interstate or foreign commerce, he satisfies that element of the offense. *White* does not address, however, the question at issue here—

whether the defendant transmits a threat in interstate commerce when he only moves it within the state.

The district court also relied on the Seventh Circuit's decision in *United States v. Haas*, 37 F.4th 1256 (7th Cir. 2022), and the Second Circuit's decision in *United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976), for the proposition that a defendant has transmitted a threat in interstate commerce "even where the defendant's immediate actions were not the direct or immediate cause of the threat crossing state lines." JA1238. But these cases present significant factual and legal differences from Mr. Hale's. In *Haas*, the defendant, in Illinois, posted threats on VK.com, a Russian social media website, which were later viewed by a group in California. On appeal, he challenged the sufficiency of the evidence that his threats were transmitted in interstate commerce, but because he did not preserve this issue below, his argument was reviewed for plain error. Given the evidence that Haas transmitted the messages to Russia by using VK.com, and that the original messages (rather than reposts by others) were then viewed in California, the court found that there was no plain error. *Id.* at 1265-66. Moreover, the court found that a jury could reasonably conclude that "Haas knowingly used VK.com to

23

facilitate an interstate transmission, just as one would use the Post Office, UPS, or FedEx to mail a letter rather than personally driving it across state lines." *Id.* at 1266. In other words, the automatic steps by which information travels form part of the defendant's interstate transmission; Haas posted his message on VK.com, and, like those of the defendants in *Whiffen*, *Tanner*, or *Kammersell*, it was automatically transmitted from there.

*Kelner* presents a different situation, but it too is inapposite. In *Kelner*, the defendant gave a press conference which was broadcast by a local TV station in which he threatened to kill Yasser Arafat. 534 F.2d at 1021. Kelner argued that he did not "cause" the transmission in interstate commerce because the independent conduct of the TV station resulted in the interview being broadcast. *Id.* at 1022. The Second Circuit rejected this argument, but they did so for a reason not applicable here: in *Kelner* the government had charged and proceeded under an aiding and abetting theory under 18 U.S.C. §2(b) as well as 18 U.S.C. § 875(c). *Id.* Here, the government argued no such theory to the jury or the district court. *See Chiarella v. United States*, 445 U.S. 222, 236-37 (1980) ("We cannot affirm a criminal conviction on the basis of a theory not presented

24

to the jury.") Moreover, to be responsible under 18 U.S.C. § 2(b), as the Second Circuit found Kelner was, Mr. Hale would have had to "willfully cause" Mr. Folck to transmit the message in interstate commerce, and the evidence in this case does not support such a finding.

The government's broad construction of "transmits" under 18 U.S.C. § 875(c) also leads to practical problems. Under the government's theory, for example, if a hypothetical Mr. Jones slides a note under Mr. Smith's door that says, "I'll kill you and your family" and Mr. Smith texts a photo of the note to his mother in another state, Mr. Jones has transmitted a threat in interstate commerce, because he has been the cause of Mr. Smith transmitting the photo. When confronted with a similar hypothetical at the district court—what if Mr. Folck had been in Abingdon and after downloading the message, had sent it on to others in the Ballad Health leadership in Tennessee—the government was unwilling to concede that that was no longer Mr. Hale's act of transmission. JA1223. Such a rationale creates an almost limitless scope of federal liability. Similarly, to use an analog analogy, if Ballad Health had a physical drop box for comments in Virginia, and Mr. Hale had written his threat on a piece of paper and placed it in the box, he would

not have sent it in interstate commerce, even if a Ballad Health employee from Tennessee then collected the box and took it back to Tennessee with him. Under the government's rationale, however, it appears that this too amounts to transmission in interstate commerce. (And what if the Ballad employee asked a friend in Virginia to pick the box up for him and hold it until he could come to get it? Or, in the hypothetical above, what if Mr. Folck's first line contact at Ballard Health also happened to be in Virginia when he received the message, but that contact forwarded it on to others in Tennessee?). This Court can avoid these line-drawing problems by giving effect to the clear language of Congress, providing that the defendant must "transmit[] in interstate or foreign commerce" the threat at issue. 18 U.S.C. § 875(c). Mr. Hale did not transmit his threat across state lines, but only to the Salesforce drop box, and the subsequent actions of others, independent of any automatic transmission, cannot convert his local activity into interstate transmission.

      3.   <u>Alternatively, the rule of lenity supports Mr. Hale's acquittal.</u>

The statutory language requiring that the defendant transmit a threat in interstate commerce is clear and unequivocal. But in the alternative, if this Court finds that the scope of "transmits in interstate

26

commerce" is ambiguous under 18 U.S.C. § 875(c), it should apply the rule of lenity. *See Shular v. United States*, 589 U.S. 154, 165 (2020). As the Supreme Court has recognized, a more lenient interpretation is appropriate where, "after consulting traditional canons of statutory construction," the statute remains ambiguous. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 US 1, 16 (2011). As courts have recognized, section 875(c) was first enacted when the telegraph was a primary mode of interstate communication, *see, e.g., Kammersell*, 196 F.3d at 1138–39, and at the time Congress had no way to anticipate or account for "today's highly digital world," JA1062, or the complications that result from it. No case appears to have addressed a situation like Mr. Hale's, and under these circumstances, this Court should apply the rule of lenity.

## **CONCLUSION**

For the foregoing reasons, Mr. Hale requests that this court reverse the decision of the district court denying his Rule 29 motion and enter a judgment of acquittal.

## **REQUEST FOR ORAL ARGUMENT**

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

Respectfully submitted this 3rd day of February, 2025.

MARY E. MAGUIRE
Federal Public Defender for the
Western District of Virginia


/s/ Erin Trodden
Erin Trodden
Va. Bar No. 71515
401 E. Market Street, Suite 106
Charlottesville, VA  22902
(434) 220-3380
Erin_Trodden@fd.org

*Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE**

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments) this brief contains 5,375 words.

2.    This brief complies with the typeface and type style requirements because it been prepared using Microsoft Word, Century Schoolbook font, 14 point proportional type size.

Dated: February 3, 2026

s/Erin Trodden
Erin Trodden
Assistant Federal Public Defender

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Erin Trodden
Erin Trodden